**WILSON et ux. v. LEVY et al.** (No. 1773.)

Court of Civil Appeals of Texas. Beaumont. Jan. 17, 1929.

972

York & Neeld, of Houston, for appellants.

Harry W. Freeman, of Houston, for appellees.

WALKER, J. This was a suit instituted by appellees against appellants upon a promissory note in the sum of $1,300, with interest and attorney's fees, and to foreclose a deed of trust lien upon certain property designated in the record as the Robbie street property. In the alternative appellees pleaded an equitable lien by subrogation on the ground that $300 of the proceeds of the deed of trust lien were used to extinguish and pay off an outstanding vendor's lien against the Robbie street property. Appellants answered that at the time of the execution by them of the deed of trust lien the Robbie street property was their homestead, and ever afterwards continued to be their homestead, and prayed for cancellation of the lien. On a trial to the court without a jury upon conclusions of fact and law judgment was entered in favor of appellees against appellants for the amount of the note and for foreclosure of the deed of trust lien, and the equitable lien, as prayed for.

As we understand appellants' brief, they have made no attack on the judgment of the trial court foreclosing the equitable lien; the facts being that at the time of the execution of the deed of trust appellants owed a vendor's lien note in the sum of $300 against the Robbie street property, which was extinguished and paid off by them with money advanced on the faith of the deed of trust lien. Therefore the judgment of the trial court foreclosing the equitable lien is affirmed, as is also the judgment awarding recovery on the note.

The remaining questions relate alone to the validity of the deed of trust lien as foreclosed against the Robbie street property. The trial court's conclusions of fact are given in full.

### "Findings of Fact.

"1. I find that on January 25th, 1926, the defendants, W. F. Wilson and wife, Wita Wilson, inspected a piece of property, hereinafter known as the Hot Wells property, accompanied by a real estate agent, one F. E. Pye; that after inspecting this property they negotiated with said Pye, the agent for the property, and agreed to purchase same for a consideration, the amount of which is not necessary for this record. That in order to secure the cash portion of the purchase price for said property they entered into negotiations with said agent to secure a loan for them on the property on which they were then residing, which will hereinafter be known as the Robbie Street property, and did procure a loan of $1,300.00 on said property, and thereafter on the following day executed a deed of trust on the Robbie Street property and a note for $1,300.00, which was secured by said deed of trust. That a deed to the Hot Wells property was executed on the 25th day of January, 1926, said deed being recorded on March 8th, 1926, from the Progressive Real Estate & Loan Company to W. F. Wilson and wife and A. L. Cook and wife.

"2. I find that on the 27th day of January, 1926, the defendants moved onto said property at Hot Wells, leaving tenants upon the Robbie Street property.

"3. I find that $750.00 of the $1,300.00 was paid on the purchase price for the Hot Wells property; that $300.00 was paid on the purchase price of the Robbie Street property, and that some $250.00 or thereabouts, was paid for deed stuff for the stock on the Hot Wells property.

"4. I find that some time in February, 1926, Ben M. Levy began negotiations for the purchase of said $1,300.00 note; that he visited the said Robbie Street property and from his investigations found that tenants of the Wilsons were occupying the property. I find that Levy had notice of a disclaimer of the Robbie Street property as a homestead by the Wilsons in said deed of trust hereinbefore referred to, in which the Wilsons disclaimed the Robbie Street property as their homestead, and said that the Hot Wells property was, at the time of the execution of the deed of trust, their homestead. And that Ben M. and Robert J. Levy were innocent purchasers of said note for value and that they had no notice, either actual or constructive, of any claim by Wilson or his wife that said Robbie Street property was their homestead.

"5. I find that the Wilsons had purchased said Robbie Street property in 1921 and had occupied said property, up to the time of the execution of said instruments, as their homestead. That they had not received a deed up to that time, but had purchased same under a contract, and that $300.00 of the purchase price of said property was paid out of the $1,300.00 loan above referred to.

"6. I find that the Wilsons occupied the Robbie Street property up to the 27th of January, 1926, when they removed to the Hot Wells property.

"7. I find that on the date of the execution of said deed of trust and note it was the intention of W. F. Wilson and Wita Wilson to abandon the homestead on Robbie Street,

and assume the Hot Wells property as their homestead, the assumption of the new homestead to take place immediately after the abandonment of the old homestead, and that the disclaimer of the Robbie Street property as their homestead was to take effect upon their removal to the Hot Wells property, and their assumption of it as their homestead.

### "Conclusions of Law.

"I conclude as a matter of law that plaintiffs are entitled to recover the principal of said note, with interest and attorney's fees, and a foreclosure of deed of trust lien on said Robbie Street property."

### Opinion.

On the facts found by the trial court we have concluded that the deed of trust lien was void at its inception, and ever afterwards continued void, and that appellants were not estopped to assert its invalidity, and that appellees were not innocent purchasers against the invalidity of the lien.

At the time of the execution of the deed of trust lien the Robbie street property was actually occupied by appellants as their homestead, and had been continuously so occupied for several years. At the time of the execution of the deed of trust lien appellants did not own the Hot Wells property, since the money advanced on the lien was used by them to make the cash payment on the Hot Wells property and the deed to the Hot Wells property had not been delivered to them prior to the execution of the deed of trust lien. The most that can be said is that the execution of the deed of trust lien and the acquisition by appellants of the Hot Wells property were simultaneous. As the Robbie street property was appellants' homestead, the Hot Wells property could not be their homestead at the same time. The rule was thus stated by our Supreme Court in Cross v. Everts, 28 Tex. 523: "Every person, in legal contemplation, has a domicile somewhere, and can have but one at any given time; and with regard to a change of domicile the general rule is, that the original domicile is not lost until a new one is actually acquired, facto et animo."

It is true that appellants in the deed of trust affirmatively designated the Hot Wells property as their homestead, but such designation did not make it the homestead. The homestead continues the homestead as long as it is owned, occupied, and used as such. It ceases to be the homestead only when it is abandoned as such. When the use of the homestead has been abandoned, and the owners are not in actual possession, abandonment then may become a question of intent. But as against actual ownership, use, and possession, when once the property has been designated as a homestead, its abandonment as such cannot be shown by the confessed intent of the owners, no matter how strong the proof of intent may be, to abandon and acquire a new one while such ownership, use, and occupancy continue. This is the law, as announced by Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 177, where Judge Stayton said: "Abandonment of property actually homestead cannot be accomplished by mere intention; there must be a discontinuance of the use, coupled with an intention not to again use as a home, to constitute abandonment; and without an abandonment of an existing homestead, no right can exist to fix that character to another property." There is no case holding that, when there is a home in fact, it might be abandoned while actually used as a homestead, and another homestead acquired by intention at some time in the future to use it as a home.

In Batts v. Middlesex Banking Co., 26 Tex. Civ. App. 515, 63 S. W. 1046, it was said: "Where it is in issue whether certain land was a homestead at the time of its sale, and the use of the land shows a homestead, it will be held such, though the vendor and his wife testify they had no homestead intention in regard to it." This proposition was reannounced in the following authorities: Kempner v. Comer, 73 Tex. 196, 11 S. W. 194; Texas Land Co. v. Blalock, 76 Tex. 85, 13 S. W. 12; Bayless v. Guthrie (Tex. Com. App.) 235 S. W. 843; and Llewellyn v. First Nat. Bank (Tex. Civ. App.) 265 S. W. 222. This proposition is further illustrated by Delaney v. Walker, 34 Tex. Civ. App. 617, 79 S. W. 601, where it was held that a mortgage given on the homestead was absolutely void, though at the time it was given the mortgagors had formed the intention of abandoning the homestead. Where the issue of homestead is raised against a deed of trust lien, the issue must be decided by the conditions existing at the time such lien was given. Crebbin v. Moseley (Tex. Civ. App.) 74 S. W. 815; Bogart v. Cowboy State Bank & Trust Co. (Tex. Civ. App.) 182 S. W. 678. Under the foregoing authorities, it follows that at its inception the deed of trust lien was void.

The facts do not show that the lien was ever validated nor that appellants were estopped to assert its invalidity. Article 16, § 50, of the state Constitution, provides that no mortgage, deed of trust, or other lien on a homestead shall ever be valid except for the purchase money therefor or improvements made thereon. Discussing this clause of the Constitution, the Commission of Appeals, in J. P. Wooten Motor Co. v. First Bank of Swenson, 281 S. W. 196, said: "It is thus seen that no mortgage upon the homestead, with the exceptions stated, 'shall ever be valid.' Judge Robertson has well said: 'What cannot "ever be valid," is never valid, and what is never valid, is always void.'" Inge v. Cain, 65 Tex. 75.

It is not the contention of appellees that appellants made a new contract or on a new

consideration ever recognized or validated or ratified the deed of trust lien, but they insist that, though its invalidity at the time of execution be conceded, yet when the property was subsequently abandoned as a homestead and the Hot Wells property was occupied, used, and enjoyed by appellants as such, the lien against the Robbie street property became effective. They cite in support of their proposition the line of authorities that gives effect to the husband's deed to the homestead, executed while the property is so occupied, after it has been abandoned, and the family has acquired a new homestead in other property. There is a distinction between the deed of the husband to the homestead and the burdening of the homestead with a deed of trust lien. The lien is void at its inception, and, as said in the case last cited, "is always void." It has been held many times that a mortgage on a homestead void at its inception is not given validity by the subsequent acquisition of another homestead. Hays v. Hays, 66 Tex. 606, 1 S. W. 895; Carter v. Hawkins, 62 Tex. 393; Moores v. Wills, 69 Tex. 109, 5 S. W. 675; Caywood v. Henderson (Tex. Civ. App.) 44 S. W. 927. In Kearby v. Cox (Tex. Com. App.) 211 S. W. 932, it was held that an invalid deed of trust against a business homestead was not validated by its subsequent abandonment. In O'Brien v. Woeltz, 94 Tex. 148, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829, it was held that a mortgage void because given on a business homestead was not validated by the subsequent abandonment of the property.

The issue of estoppel was not in the case. Appellees did nothing more in buying the note and lien than to examine the record. They found the property occupied by appellants' tenants. They made their investment on faith of the designation by appellants of the Hot Wells property as their homestead and the waiver by them of homestead rights in the Robbie street property. This designation and waiver did not constitute an estoppel. Appellees did not plead nor did they rely on any act on the part of appellants outside of the instrument itself. The instrument and its recitations did not constitute an estoppel.

In Equitable Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301, it was held by the Supreme Court that estoppel must be made out, not from the invalid instrument, but from the facts outside of it. In Knowles v. Waddell Investment Co. (Tex. Civ. App.) 280 S. W. 885, it was held that a deed of trust to land actually occupied as a homestead was void, notwithstanding the statement of the owners that they had abandoned the land and moved from the state. In Blanton v. Alexander (Tex. Civ. App.) 298 S. W. 308, it was held that, where owners were residing on homestead when mortgage was executed, the mortgage was void, regardless of representations made to mortgagee.

Since the deed of trust was void under the Constitution, appellees were not innocent purchasers. Discussing the defense of innocent purchaser against such a lien, Judge Brown, speaking for the Supreme Court in State Bank of Chicago v. Holland, 103 Tex. 266, 126 S. W. 564, said: "Illegality is not, as a rule, a defense to commercial paper in an action thereon by a bona fide holder for value before maturity without notice, unless the instrument is void ab initio."

In Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1320, Judge Phillips, for the Supreme Court, said: "In order to hold a negotiable note unenforceable in the hands of a bona fide holder it is not enough that it be founded upon an illegal consideration. It is not sufficient that it issue from a transaction prohibited by law, or one even denounced as criminal. To avoid it in the bona fide holder's hands there must be a constitutional or statutory provision which expressly, or by unavoidable implication, declares it or the transaction of which it is a part, to be void. Such is the rule announced by Chitty, Story and Daniel. It is the rule followed by this court, and generally by courts elsewhere."

On the foregoing conclusions the deed of trust lien pleaded by appellees was void at its inception and was never subsequently validated, and appellees were not innocent purchasers against its invalidity.

It follows that the judgment of the trial court foreclosing the deed of trust lien must be reversed, and judgment rendered on that issue in favor of appellants. In all other respects the judgment is affirmed.

Reformed and affirmed.